COURT OF APPEALS OF VIRGINIA


Present:   Judges Clements, Haley and Senior Judge Overton
Argued at Richmond, Virginia


VICTOR MICHAEL BRANCHE
                                                    MEMORANDUM OPINION* BY
v.        Record No. 0912-05-2                      JUDGE JAMES W. HALEY, JR.
                                                         MAY 9, 2006
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                         Margaret P. Spencer, Judge

            (Randolph L. Carl, on brief), for appellant.  Appellant submitting on
            brief.

            Michael T. Judge, Assistant Attorney General (Judith Williams
            Jagdmann, Attorney General, on brief), for appellee.


        Victor M. Branche appeals from his conviction of the following felonies:  burglary; statutory

burglary; rape; sodomy; abduction; attempted robbery; and five firearms charges associated with the

above.  The sole issue granted on appeal was "whether the trial court's denial for funds for a DNA

expert violated appellant's constitutional right of due process and existing state law."[1]  We affirm.

                                         I.

        Under familiar principles, "'we review the evidence in the light most favorable to the

Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'"  Peake v.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] We note that appellant also submitted question and argument on the sufficiency of the evidence.  However, an appeal was not granted on that issue.  "[O]n appeal, we will consider 'only those arguments presented in the petition for appeal and granted by this Court . . . .'" Parker v. Commonwealth, 42 Va. App. 358, 373, 592 S.E.2d 358, 366 (2004) (citations omitted). Thus, we will not consider appellant's argument on the sufficiency of the evidence, as we did not grant a review of that issue.

Commonwealth, 46 Va. App. 35, 37-38, 614 S.E.2d 672, 674 (2005) (quoting Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted)).

II.

FACTS

At approximately 10:40 p.m. on March 31, 2004, A.B. (the victim) returned to her apartment in Richmond, Virginia. She was confronted therein by a man who told her he had two guns. He demanded money, the keys to her car, and threatened to kill her. At trial, A.B. identified the tan shirt he was wearing on that night.

The man forced A.B. to undress, took off his own pants and underwear, and placed his penis in her mouth. After threatening to nail her to the wall with nails he removed from his tan shirt, he placed his penis in her vagina. On neither occasion did the man have an erection or ejaculate. After committing these sexual acts, the man wiped his penis on A.B.'s pillowcase. A.B. testified that the man drank from a liquor bottle and forced her to take a drink from it too.

A.B. testified that, at one point, appellant hit her in the mouth, causing a cut that bled on the tan shirt he was wearing. She further testified as to various other bruises on her body, including her legs. While struggling with appellant, she elbowed him in the stomach and escaped naked from the apartment. At trial, she identified appellant as her assailant.

Police responded to A.B.'s 911 call at approximately 10:50 p.m. Officers arrested appellant around midnight. Appellant told Officer Warren Andorfer that he did not rape anyone because he could not have an erection. He also told Sergeant Emmett Williams "I don't want no white girl's pussy," despite never being advised of the victim's race.

Eve Rossi of the Virginia Division of Forensic Science performed DNA analysis on the evidence recovered from the scene. The Commonwealth provided her written report to the defense

in timely fashion. After reviewing the report, appellant filed a written motion for appointment of a DNA expert. That written motion explained that the report's

> conclusion is flawed and based on unreliable scientific conclusions that will require expert assistance to demonstrate. In particular defendant needs to employ experts to conduct DNA testing and evaluation of the Commonwealth's evidence. Counsel certifies that if his client had sufficient funds, he would routinely employ an expert in this matter.

The written motion also asserted that "[t]he defendant's need for . . . a DNA expert is material in the preparation of his defense and the denial of such would be prejudicial to his case and result in a fundamentally unfair trial."

The parties presented argument on the motion at a September 13, 2004 hearing. There, appellant's counsel argued, "I need an expert to help me with this, because there was no DNA or any type of sexual finding . . . . There are different things that bother[] me about the report, which I don't understand." Counsel reiterated his request

> to have an expert review Dr. Eve Rossi's report, look it over with all supporting documents, and make sure we have the right person, we have the right DNA, make sure it is consistent. . . . If there are problems, I can come back with my expert tomorrow to say, Judge, it doesn't make any sense at all.

The trial court denied the motion.

Rossi's report, in pertinent part, and her testimony at trial showed as follows: (1) no DNA from oral or vaginal swabs matched the appellant or any third party; (2) DNA analysis of perspiration stains from the neck of the tan shirt matched that of the appellant's to a probability of 1 in 6 billion; (3) DNA analysis of the blood stain on the tan shirt matched that of A.B.'s to a probability of 1 in 6 billion; and (4) DNA from the liquor bottle was consistent with that of both A.B. and appellant and excluded others.

With respect to the oral and vaginal swabs, Ms. Rossi testified that, while it was possible to recover a DNA sample from skin cells in the absence of ejaculation, she "had not had great success

with obtaining DNA" in such circumstances. Rossi found no skin cells in the swabs and explained that skin cells can simply be wiped or washed away.

Appellant testified that he had never seen A.B. before March 31, 2004. He testified that on that evening he entered her apartment through a window, found and drank from a liquor bottle in the refrigerator, and met A.B. coming in the door. He denied threatening her, though he did acknowledge grabbing her shoulders in an effort "to calm her down." He "ask[ed] her for a couple of dollars" and testified that "[t]he next thing I knew her clothes came off." He denied any sexual contact with A.B. According to appellant, the encounter lasted about "10 minutes" and ended when A.B. "pushed me out of the way and took off naked."

With respect to the crimes in which A.B. was the victim, the trial court convicted appellant of burglary, rape, forcible sodomy, abduction, attempted robbery, and five counts of use of a firearm associated with those charges. The trial court sentenced appellant to two life terms and twenty-three years.[2]

III.

ANALYSIS

In the recent case of Juniper v. Commonwealth, 271 Va. 362, 626 S.E.2d 383 (2006), the Virginia Supreme Court reiterated due process requirements as they relate to an indigent defendant: "[W]hile the Commonwealth is required to provide adequate expert assistance to indigent defendants in certain circumstances, it is not required to provide them with 'all

_____

[2] The trial court also convicted appellant of another count of statutory burglary. During the trial, Elizabeth Weiner testified that between 11:30 and 11:45 p.m. on March 31, 2004, appellant partially broke into her apartment and threatened her by saying he had a gun. She closed and locked her door and immediately called police. No DNA evidence was adduced with respect to these charges, and accordingly, they are beyond the parameters of the assignment of error.

assistance that a non-indigent defendant may purchase.'" Id. at 392, 626 S.E.2d at 403 (quoting

Husske v. Commonwealth, 252 Va. 203, 211, 476 S.E.2d 920, 925 (1996)).  As held in Husske,

"an indigent defendant who seeks the appointment of an expert witness, at the Commonwealth's

expense, must demonstrate that the subject which necessitates the assistance of the expert is

'likely to be a significant factor in his defense' . . . and that he will be prejudiced by the lack of

expert assistance."  252 Va. at 211-12, 476 S.E.2d at 925 (citation omitted).  Furthermore,

> "[a]n indigent defendant seeking the appointment of an expert has
> the burden of showing a particularized need therefor.  The required
> showing must be determined on a case-by-case basis, and a
> determination whether an adequate showing has been made is a
> matter that rests within a trial court's discretion. . . . A hope or
> suspicion that favorable evidence may be procured from an expert,
> however, is not sufficient to require the appointment of an expert."

Juniper, 271 Va. at 392, 626 S.E.2d at 403 (quoting Barnabei v. Commonwealth, 252 Va. 161,

171, 477 S.E.2d 270, 276 (1996)).

Here, appellant's request for a DNA expert is similar to that made in Commonwealth v.

Sanchez, 268 Va. 161, 597 S.E.2d 197 (2004).  There, the Virginia Supreme Court held

> [a] review of Sanchez' proffer reflects that it rests only on
> conclusory assertions; nothing in his proffer is particularized.  He
> represented to the trial court "that there were errors in the way that
> the DNA procedures were followed . . . which could have had a
> significant impact in the results of the DNA."  Sanchez' counsel
> then stated, again in conclusory fashion, "therefore the DNA
> results that the Commonwealth is going to put forth as being
> scientifically valid could be questioned, will be questioned, to an
> extent."  These statements are not "particularized" because they
> indicate nothing more than Sanchez' "hope or suspicion" regarding
> the availability of evidence favorable to him with respect to the
> DNA test results and procedures.

Id. at 167, 597 S.E.2d at 200.

Likewise, in Husske, the Virginia Supreme Court held that the defendant in that case did

not adequately demonstrate a particularized need.  There, "the defendant asserted, *inter alia*, that:

DNA evidence is 'of a highly technical nature;' he thought it was difficult for a lawyer to

challenge DNA evidence without expert assistance; and he had concerns about the use of DNA evidence . . . ." 252 Va. at 213, 476 S.E.2d at 926. The Court held that such "generalized statements" failed to demonstrate a particularized need. Id.

The same may be said about Branche's proffer; his "generalized statements" and "conclusory assertions" did not show a particularized need. Despite claiming in the written motion that the "conclusion is flawed and based on unreliable scientific conclusions," appellant informed the trial court at the hearing that the DNA expert would help him understand Dr. Rossi's report and "make sure we have the right person, we have the right DNA, make sure it's consistent." As is clear from Sanchez and Husske, such a proffer does not demonstrate a "particularized need" as required for the trial court to appoint an expert. As such, the trial court had no basis on which to appoint Branche a DNA expert.

We also note that, counsel stated in his written motion that if he had sufficient funds, he would "routinely employ an expert in this matter." Such a claim does not inform the trial court of any particularized need specific to this case, as a matter that is routine is employed on every applicable occasion. Moreover, the Commonwealth sought to introduce incriminating DNA evidence in this case only to prove appellant's presence in the apartment, not sexual contact. Appellant though admitted being present in the apartment during his trial testimony. As such, he cannot claim that alternate DNA results would be essential to his defense, as he did not deny being in the apartment in the first place. His strategy at trial was to provide an alternate explanation to the evening's events, not to dispute his presence and involvement.

Finally, and as noted both above and in Sanchez, "an indigent defendant is not constitutionally entitled, at the state's expense, to all the experts that a non-indigent defendant might afford." 268 Va. at 165, 597 S.E.2d at 199 (citing Husske, 252 Va. at 211, 476 S.E.2d at 925). All that is required, in accordance with due process, is for "indigents to have an adequate

opportunity to present their claims fairly within the adversary system." <u>Ross v. Moffitt</u>, 417 U.S. 600, 612 (1974). We hold that appellant had such an opportunity and therefore was not denied due process. As such, the trial court did not abuse its discretion in refusing to grant appellant a DNA expert at state expense and, accordingly, appellant's convictions are affirmed.

<u>Affirmed.</u>